**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**JACOB BARNES,** *et al*          **CIVIL ACTION NO. 1:21-cv-00024**

**VERSUS**                **DISTRICT JUDGE DAVID C. JOSEPH**

                 **MAGISTRATE JUDGE PEREZ-MONTES**

**DRESSER, LLC,** *et al.*          **JURY DEMAND**
***********************************************************************************

### FOURTH AMENDED AND RESTATED COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who respectfully state in their Fourth Amended and Restated Complaint for Damages as follows:

### INTRODUCTION

1.      From 1961 to 2016, Defendants owned, operated and/or controlled an industrial facility located at 8011 Shreveport Highway, Pineville, Louisiana, which manufactured, repaired, coated, and painted specialized valves and related products (the "Dresser Facility" or "Facility").

2.      On or about November 23, 2011, the fracture of a fire hydrant near a chemical storage building at the Dresser Facility caused and/or revealed contamination of the soil under the Dresser Facility with hazardous chemicals, including trichloroethene (TCE) and tetrachloroethene (PCE).

3.      Based on information and belief, improper storage and disposal activities at the Facility throughout its period of operation caused or contributed to the scope of the contamination.

4.      In response, the Louisiana Department of Environmental Quality ("LDEQ") has undertaken the most extensive groundwater investigation program in the history of the agency, revealing a large groundwater contamination plume affecting hundreds—if not thousands—of nearby property owners and residents (the "Dresser Contamination Plume"). See Exhibit A.

5.    Commencing on or about January 8, 2020, LDEQ began notifying residents in close proximity to the Dresser Facility about the contamination of the groundwater and potential risks.

6.    At all times prior to January 8, 2020, the Dresser Contamination Plume, the contamination events and activities leading to its formation, and the related environmental and health risks were hidden from the public, including area landowners.

## **PARTIES**

7.    Made plaintiffs herein are the following:

i.    **JACOB BARNES** and **AMY BARNES,** individually, and on behalf their minor children, **NICOLE BARNES** and **JOEY BARNES,** persons of the full age of majority and who own property and reside at 369 Grays Creek Road, Dry Prong, Louisiana 71423;

ii.    **DANNY CAMPBELL and MONICA CAMPBELL,** persons of the full age of majority who own property and reside at 8246 Shreveport Hwy, Pineville, Louisiana 71360, and who own property located at 8217 Shreveport Hwy (d/b/a Tioga Golf Cart, Co.) and 40 acres (+/-) south of Graystone Subdivision in Pineville, Louisiana;

iii.    **CAMPBELL'S CONSTRUCTION, INC.,** a Louisiana corporation with its principal place of business at 8246 Shreveport Highway, Pineville, Louisiana 71360, and which own Lots 18 and C-1 of Graystone Subdivision in Pineville, Louisiana;

iv.    **THOMAS CAMPBELL,** a person of the full age of majority residing at 105 Graystone Road, Pineville, Louisiana, 71360;

v.    **GARY BARTH** and **KATHALENE BARTH,** persons of the full age of majority residing at 8400 Highway 71 North, Pineville, Louisiana 71360;

vi.    **BARTH PROPERTIES, LLC,** a Louisiana limited liability company with its registered office at 9161 Highway 28 E, Pineville, Louisiana 71360, which owns Lots C-2 and C-3 of Graystone Subdivision, eight additional tracts totaling approximately 390 acres in close proximity to the Dresser Facility in Rapides Parish and Grant Parish, Louisiana, 21445 US- 167, Dry Prong, LA 71423, and 21449 US-167, Dry Prong, LA 71423;

vii.    **WESLEY HILBORN** and **KRISTEN HILBORN,** persons of the full age of majority who own and reside at 8450 Highway 71 North, Pineville, Louisiana 71360;

viii.   **HILBORN ENTERPRISES, LLC,** a Louisiana limited liability company whose mailing address is P.O. Box 1150. Tioga, Louisiana, which owns the property at 1003 Jennifer's Place Dr., Pineville, Louisiana 71360;

ix.     **BARTH & GRIMES PROPERTIES, LLC,** a Louisiana limited liability company with its registered office at 9161 Highway 28 East, Pineville, Louisiana, which owns property at 21426 Highway 167 North, Pineville, Louisiana 71360;

x.      **FRANK GRIMES and PATRICIA GRIMES,** persons of the full age of majority who reside at 4705 Christopher Place, Alexandria, Louisiana 71303, and who own property at 8320 and 8322 Highway 71 North, Pineville, Louisiana 71360;

xi.     **GRIMES FAMILY PROPERTIES, LLC,** a Louisiana limited liability company with its registered office at 4705 Christopher Place, Alexandria, Louisiana 71303, and which owns property at 8320 and 8322 Highway 71 North, Pineville, Louisiana 71360**;**

xii.    **FUEL PLUS CHEVRON, INC.,** a Louisiana corporation with its principal place of business at 8320 and 8322 Highway 71 North, Pineville, Louisiana;

xiii.   **ALEXANDRIA/PINEVILLE REAL ESTATE, LLC,** a Louisiana limited liability company with its registered office at 1288 Dorchester Dr., Alexandria, Louisiana 71303, which owns 44 acres (+1-) at 21459 Highway 167 North, Dry Prong, Louisiana;

xiv.    **SANDRA CRAWFORD,** individually, and on behalf of her minor child, **ANTHONY WAYNE CRAWFORD,** a person of the full age of majority residing at 242 Grays Creek Road. Dry Prong, Louisiana 71423;

xv.     **HOLLIE COLVIN,** a person of the full age of majority residing at 320 Kings Drive, Pineville, Louisiana 71360;

xvi.    **SARAH WHITE**, a person of the full age of majority residing at 280 Kings Drive, Pineville, Louisiana 71360;

xvii.   **TAMMY GEORGE**, a person of the full age of majority residing at 300 Kings Drive, Pineville, Louisiana 71360;

xviii.  **CYNTHIA WOODWARD**, a person of the full age of majority residing at 1625 W. Medalist Road, Pineville, Louisiana 71360;

xix.     **VICKY MARCANTEL,** a person of the full age of majority residing at 1530 Masters Drive, Pineville, Louisiana 71360;

xx.      **MARIETTA STEWART,** a person of the full age of majority residing at 276 Kings Drive, Pineville, Louisiana 71360;

xxi.     **JUDY AGUILLARD,** a person of the full age of majority residing at 107 Garnet Street, Pineville, Louisiana 71360;

xxii.    **JULIE AGUILLARD,** a person of the full age of majority who resided at 107 Garnet Street, Pineville, LA 71360 from 2005 through 2011, and currently residing at 360 Albany Avenue, Shreveport, Louisiana, 71105.

xxiii.   **CHAD VANHUIS,** a person of the full age of majority residing at 162 Deerbrook Trail, Pineville, Louisiana 71360;

xxiv.    **KATHERINE MARINO,** a person of the full age of majority residing at 1518 E. Medalist Road, Pineville, Louisiana 71360;

xxv.     **JOSHUA DARA,** a person of the full age of majority who owns property and resides at 1521 Masters Drive, Pineville, Louisiana 71360;

xxvi.    **TOMMIE MACK GRANGER** and **DARE GRANGER,** persons of the full age of majority who own property and reside at 1519 Masters Drive, Pineville, Louisiana 71360;

xxvii.   **PATRICK BARDWELL** and **MARY BARDWELL,** persons of the full age of majority who own property and reside at 371 Kings Drive, Pineville, Louisiana 71360;

xxviii.  **MARY N. GAUTHIER,** a person of the full age of majority residing at 740 Austin Drive, Pineville, Louisiana 71360;

xxix.    **NETTIE M. COLWELL,** a person of the full age of majority residing at 740 Austin Drive, Pineville, Louisiana 71360;

xxx.     **JAIMEE ANN GAUTHIER,** a person of the full age of majority residing at 740 Austin Drive, Pineville, Louisiana 71360;

xxxi.    **MICHALE T. GUILLORY,** individually, and on behalf of her minor child, **HALEY GUILLORY,** is a person of the full age of majority residing at 106 Aurora Drive, Pineville, Louisiana 71360;

xxxii.   **ALYSSA GUILLORY**, a person of the full age of majority residing at 106 Aurora Drive, Pineville, Louisiana 71360;

xxxiii.    **BRANDON LONG,** a person of the full age of majority residing at 97 Aurora Drive, Pineville, Louisiana 71360;

xxxiv.    **JOANNE BENTONCOURT,** a person of the full age of majority residing at 129 Arlington Drive, Pineville, Louisiana 71360;

xxxv.    **MARILYN W. PETERSON,** a person of the full age of majority residing at 8155 Titleist Drive, Pineville, Louisiana 71360;

xxxvi.    **MARY A. LEMOINE,** a person of the full age of majority residing at 132 Arlington Drive, Pineville, Louisiana 71360;

xxxvii.    **DUSTIN ELLER,** a person of the full age of majority residing at 109 Arlington Drive, Pineville, Louisiana 71360;

xxxviii.    **JACK COOPER, SR.,** a person of the full age of majority residing at 420 Ates Road, Pineville, Louisiana 71360;

xxxix.    **LISA GREER,** individually, and on behalf of her minor children, **LANDON GREER, GAVIN GREER,** and **BRADEN GREER,** a person of the full age of majority residing at 123 Kaylie Lane, Dry Prong, Louisiana 71360;

xl.    **SHERIE COOPER,** individually, and on behalf of her minor child, **VERONIKA COOPER,** a person of the full age of majority residing at 316 Ates Road, Pineville, Louisiana 71360;

xli.    **CONNIE METHVIN,** a person of the full age of majority residing at 110 Arlington Drive, Pineville, Louisiana 71360;

xlii.    **ANA METHVIN BUTLER,** on behalf of the minor child, **BREANA BUTLER,** who resides at 110 Arlington Drive, Pineville, Louisiana 71360;

xliii.    **DENISE WHITE,** on behalf of her minor children, **MAKAYLA METHVIN, CHRISTOPHER COHEA,** and **HALEY COHEA,** a person of the full age of majority residing at 109 Arlington Drive, Pineville, Louisiana 71360;

xliv.    **ANDREA HENAGAN,** individually, and on behalf of her minor children, **BLAZE HENAGAN, ASPEN HENAGAN,** and **RUSH HENAGAN,** a person of the full age of majority residing at 1522 East Medalist Drive, Pineville, Louisiana 71360;

xlv.    **KATIE COOK,** individually, and on behalf of her minor children, **EMILY COOK, EVANGELINE COOK, DAISY COOK,** and **LOLA**

**FONTENOT,** a person of the full age of majority residing at 1510 East Medalist Drive, Pineville, Louisiana 71360;

xlvi.    **CHRISTOPHER COOK,** a person of the full age of majority residing at 1510 East Medalist Drive, Pineville, Louisiana 71360;

xlvii.   **ANGELA LACROIX,** a person of the full age of majority residing at 1628 West Medalist Road, Pineville, Louisiana 71360;

xlviii.  **JAMIE HENAGAN,** a person of the full age of majority residing at 1805 West Medalist Road, Pineville, Louisiana 71360;

xlix.    **SHARON HODGES,** a person of the full age of majority residing at 1526 Masters Drive, Pineville, Louisiana 71360;

l.       **PATSY ADAMS,** a person of the full age of majority residing at 94 Aurora Drive, Pineville, Louisiana 71360;

li.      **DANELLE BARDWELL,** a person of the full age of majority residing at 1510 Masters Drive, Pineville, Louisiana 71360;

lii.     **TABITHA BENEDICT,** a person of the full age of majority residing at 420 Ates Road, Pineville, Louisiana 71360;

liii.    **GERALD C. CARMOUCHE,** individually, and on behalf of his minor child, **BRAYLEE CARMOUCHE,** a person of the full age of majority residing at 720 Austin Drive, Pineville, Louisiana 71360;

liv.     **THERESA H. CHESSER,** a person of the full age of majority residing at 124 Arlington Drive, Pineville, Louisiana 71360;

lv.      **MARJORIE COOK,** a person of the full age of majority residing at 138 Arlington Drive, Pineville, Louisiana 71360;

lvi.     **ALBERT N. DOWNS,** a person of the full age of majority, who currently resides at 1409 Highway 457, Lecompte, Louisiana 71346, but resided at 7517 Shreveport Highway, Pineville, Louisiana 71360 from 2006 until 2015;

lvii.    **ANN MARIE ERMATINGER,** a person of the full age of majority residing at 8162 Titleist Drive, Pineville, Louisiana 71360;

lviii.   **STACY TUCKER,** a person of the full age of majority residing at 355 Longstreet, Pineville, Louisiana 71360, but formerly resided at 123 Arlington Drive, Pineville, Louisiana 71360;

lix.     **SANDRA LONDON WALLER,** a person of the full age of majority residing at 7428 Shreveport Highway, Pineville, Louisiana 71360;

lx.      **LOUISE WILKERSON,** a person of the full age of majority residing at 101 Arlington Drive, Pineville, Louisiana 71360;

lxi.     **DARLA W. CORLEY,** a person of the full age of majority residing at 1506 East Medalist Road, Pineville, Louisiana 71360;

lxii.    **MARGARET O'NEAL,** a person of the full age of majority residing at 1626 West Medalist Road, Pineville, Louisiana 71360;

lxiii.   **ASHLEY RODGERS,** a person of the full age of majority residing at 1621 West Medalist Road, Pineville, Louisiana 71360;

lxiv.    **JENNIFER FOSTER TARVER,** a person of the full age of majority residing at 8087 Ridgemont Road, Pineville, Louisiana 71360;

lxv.     **CAROL EDDLEMON,** a person of the full age of majority residing at 1514 East Medalist Road, Pineville, Louisiana 71360;

lxvi.    **DANNY CREEL** and **DEBRA CREEL,** persons of the full age of majority who own property and reside at 1801 West Medalist Drive, Pineville, Louisiana 71360;

lxvii.   **CHRISTOPHER BEESON** and **TAMMY BEESON,** persons of the full age of majority, who own property and reside at 8424 Ridgemont Drive, Pineville, Louisiana 71360;

lxviii.  **LAUREN BEESON,** a person of the full age of majority, who resides at 8424 Ridgemont Drive, Pineville, Louisiana 71360;

lxix.    **CHASE BEESON,** a person of the full age of majority, who resided at 8424 Ridgemont Drive, Pineville, Louisiana 71360, but currently resides at 6732 Eastbrook Trace, Ball, Louisiana 71405.

lxx.     **KENNETH L. TRACY** and **PAMELA TRACY,** persons of the full age of majority who own property and reside at 1800 West Medalist Road, Pineville, Louisiana 71360;

lxxi.    **DINTON KITCHENS, JR** and **VERONICA M. KITCHENS,** persons of the full age of majority who own property and reside at 119 Rustic Manor Cove, Pineville, Louisiana 71360;

lxxii.   **CHAZ CANNOVA,** a person of the full age of majority who owned property and resided at 1712 W. Medalist Drive, Pineville, Louisiana 71360;

lxxiii.   **EMILY V. BAUM** and **RYAN CHASE BAUM,** persons of the full age of majority who own property and reside at 8108 Titleist Drive, Pineville, Louisiana 71360;

lxxiv.   **MARK CHANDLER** and **PAM CHANDLER,** persons of the full age of majority who own property and reside at 8113 Titleist Drive, Pineville, Louisiana 71360;

lxxv.   **FRANK GRIMES, SR.** and **MARGARET W. GRIMES,** persons of the full age of majority who own property and reside at 8112 Titleist Drive, Pineville, Louisiana 71360;

lxxvi.   **SANDRA MILLINER,** a person of the full age of majority who resides at 295 Kings Drive, Pineville, Louisiana 71360;

lxxvii.   **DENNIS CARTER** and **KARLA CARTER,** persons of the full age of majority, who own property and reside at 212 Lynell Road, Pineville, Louisiana 71360;

lxxviii.   **KELSEE CARTER BOYER,** a person of the full age of majority who resided at 212 Lynell Road, Pineville, Louisiana 71360 from 2004 until 2014, and currently lives at 381 Walker Ferry Road, Pollock, Louisiana 71467;

lxxix.   **DANIELLE CARTER BRADAS,** a person of the full age of majority, who resided at 212 Lynell Road, Pineville, Louisiana from 2004 until 2016 and currently resides at 1094 East Meade, Pollock, Louisiana 71467;

lxxx.   **DYLAN P. CARTER,** a person of the full age of majority who resided at 212 Lynell Road, Pineville, Louisiana 71360 from 2004 until December 2021, and currently owns property and resides at 151 Kings Walk, Pineville, Louisiana 71360.

lxxxi.   **JOSEPH McLAREN,** a person of the full age of majority who owns and resides at 8116 Titleist Drive, Pineville, Louisiana 71360;

lxxxii.   **KEVIN P. BAILLIO,** a person of the full age of majority who owns and resides at 247 Lonnies Loop, Pineville, Louisiana 71360 and owns property located at 223 Ates Road, Pineville, Louisiana 71360 and Parcel No. 2501668030000101 comprising +123 acres near Fairway East and Ates Road;

lxxxiii.   **KELSEY BAILLIO GORE,** a person of the full age of majority who resides at 223 Ates Road, Pineville, Louisiana 71360;

lxxxiv.   **DARIN BAILLIO,** a person of the full age of majority who resides at 247 Lonnies Loop, Pineville, Louisiana 71360;

lxxxv.   **JUAN SALDANA** and **SHANNON SALDANA,** individually and on behalf of their minor children, **SHANNON SALDANA, BRADY SALDANA,** and **SOPHIE SALDANA,** persons of the full age of majority who reside at 8105 Titleist Drive, Pineville, Louisiana 71360;

lxxxvi.   **CHLOE VOISELLE,** a person of the full age of majority, who resides at 8105 Titleist Drive, Pineville, Louisiana 71360;

lxxxvii.   **ROBERT "BOB" MILLER** and **LINDA MILLER,** who own property and reside at 517 Eagle Drive, Pineville, Louisiana 71360, and who co-own Parcel No. 2501668014002101 located in Fairway East neighborhood, Pineville, Louisiana 71360;

lxxxviii.   **RONALD SULLIVAN** and **BONNIE SULLIVAN,** who co-own Parcel No. 2501668014002101 located in Fairway East neighborhood, Pineville, Louisiana 71360, and reside at 102 Fawn Lane, Broussard, Louisiana 71360;

lxxxix.   **ANN ROGERS**, a person of the full age of majority, who resides at 1620 W. Medalist Drive, Pineville, Louisiana 71360;

xc.   **CODIE MOON**, individually and on behalf of his minor children, **JOURNEY MOON** and **DAYTON MOON**, who reside at 108 Aurora Drive, Pineville, Louisiana 71360;

xci.   **AMY OVERFIELD MOON** on behalf of her minor children **CONNOR OVERFIELD** and **NATHANIEL OVERFIELD**, who reside at 108 Aurora Drive, Pineville, Louisiana 71360;

xcii.   **BROOKE KITCHENS DESHOTEL**, a person of the full age of majority who resided at 119 Rustic Manor Pineville, Louisiana 71360 from 1998 to 2011 and from 2014 to 2016 at 768 Austin Drive, Pineville, Louisiana 71360 but now resides at 190 Michael Lane, Pollock, Louisiana 71467; and

xciii.   **COREY DESHOTEL**, a person of the full age of majority who resided at 768 Austin Drive, Pineville, Louisiana 71360 from 1992 to 2007 and 2014 to 2016, but now resides at 190 Michael Lane, Pollock, Louisiana 71467.

8.   Made defendants herein are the following (hereinafter, collectively, "Defendants"):

i.   **Dresser LLC**, f/k/a Dresser Inc. or Dresser Industries, Inc., is a Delaware company with its principal place of business in Texas. Dresser LLC is authorized to do business in the State of Louisiana, and its registered agent for service of process is CT Corporation System at 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

ii.   **Dresser RE, LLC**, is a Delaware company with its principal place of business in Texas. Dresser RE, LLC is authorized to do business in the State

of Louisiana, and its registered agent for service of process is CT Corporation System at 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

iii.  **Baker Hughes Company** ("**Baker Hughes**") is a Delaware company with its principal place of business in Texas. Baker Hughes is the successor-in-interest to Dresser LLC. Defendant's agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas.

iv.  **Baker Hughes Energy Services LLC** ("**Baker Hughes Energy**") is a Delaware company with its principal place of business in Texas. Baker Hughes Energy is authorized to do business in the State of Louisiana, and its registered agent for service of process is CT Corporation System at 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

v.  **Halliburton Energy Services, Inc.** ("**Halliburton**") is a Delaware company with its principal place of business in Texas. Halliburton is authorized to do business in the State of Louisiana, and its registered agent for service of process is Capitol Corporate Services, Inc., at 8550 United Plaza Building II, STE 305, Baton Rouge, LA 70809.

vi.  **General Electric Company,** is a New York company with its principal place of business in Massachusetts. General Electric Company is licensed to do and is doing business in the State of Louisiana, and its registered agent for service of process is C T Corporation System at 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

vii.  **GE Oil & Gas, LLC** is a successor-in-interest by merger acquisition, and/or name change to Halliburton Company, Dresser Industries, Inc., Manning, Maxwell and Moore, DII Industries, and DII Industries, LLC a foreign corporation authorized to do and doing business in the State of Louisiana whose agent for service of process is Capital Corporate Services, Inc., 8550 United Plaza Boulevard, Building II, Suite 305, Baton Rouge, Louisiana.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction pursuant to 28 U.S.C. §1332 because complete diversity exists between the Plaintiffs and the Defendants. The Plaintiffs are citizens of Louisiana, but no Defendant is a citizen of Louisiana. Defendants are incorporated and maintain principal places of business in locations other than Louisiana, as outlined above. The amount in controversy exceeds the jurisdictional amount necessary to establish diversity jurisdiction.

10.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391. Venue is proper in this division because all affected properties and the events or omissions giving rise to the claims occurred within this division.

## FACTS

11.     At all times material hereto, Defendants owned and/or operated the Dresser Facility and the property on which it sits.

12.     The Dresser Facility operated from 1961 to 2016. During that time, Defendants generated, handled, used, stored, and disposed of hazardous waste on site.

13.     Hazardous waste at the Dresser Facility were derived, in part, from solvents, cutting oils, acids, and caustics used in cleaning and degreasing the valves, other metal parts, and machinery. For many years, these wastes were disposed of into a series of drains, vaults, tanks, and/or a pit, and flowed directly to the ground surface beneath the Facility, according to consultants for Defendants and LDEQ.[1]

14.     Defendants, each at various times during ownership and control of operations, failed to properly design, construct, and operate waste processes, use systems, and storage facilities to prevent leaching of hazardous wastes into the ground and groundwater and to prevent offsite migration of contaminants to/under the Plaintiffs' properties.

15.     Defendants' improper storage and disposal of solvents contributed to the release of hazardous or toxic waste into the environment.

---

[1] *See* "Investigation and Monitoring Report," Stantec, July 30, 2019, pages 1.2 and 3.5 (identifying a hazardous waste storage tank at the southeast area of the Facility) and "Exploratory Source Investigation Work Plan," Stantec, April 13, 2020 (describing an "unknown sump . . . that may have historically been associated with handling waste for spent chlorinated solvents ...").

16.     The solvents dumped, spilled, and/or released at and/or from the Dresser Facility are highly chlorinated compounds and include, but are not limited to, tetrachloroethene (PCE) and trichloroethene (TCE). Both PCE and TCE have been found in groundwater under and in the vicinity of the Facility at levels that exceed state standards.

17.     TCE is a colorless, volatile liquid that has been used as a solvent to remove grease from metal parts. Although it evaporates quickly in air, TCE breaks down very slowly in soil and water. Exposure to TCE has been linked to a number of adverse health effects, including cancer, kidney and liver damage, and developmental harm.[2]

18.     PCE is a nonflammable, colorless liquid that has been used as a dry-cleaning agent and metal degreasing agent. When released into the environment, PCE may evaporate quickly from shallow soils or may filter through the soil and into the groundwater below, but it is generally slow to break down in soil and water. Studies in animals have shown PCE exposure is linked to liver and kidney effects, cancers, and changes in brain chemistry. Studies in humans suggest that exposure to PCE might lead to a higher risk of getting bladder cancer, multiple myeloma, or non-Hodgkin's lymphoma.[3]

19.     In addition to TCE and PCE, multiple other contaminants have been detected in groundwater under and near the Dresser Facility at levels that exceed state standards, including 1,1,2-Trichloroethane (1,1,2-TCA); 1,1 -Dichloroethene (1,1 -DCE); Cis-1,2-Dichloroethene (cis - DCE); and vinyl chloride (VC).

---

[2] https://www.atsdr.cdc.gov/toxfaqs/tfacts19.pdf.

[3] https://www.atsdr.cdc.gov/toxfaqs/tfacts18.pdf.

20.    PCE and 1,1,2-TCA were commonly used solvent constituents and found in TCE-based solvents. According to Defendants' consultants, 1,1-DCE, cis-DCE and VC are likely the result of dechlorination of PCE and TCE.[4]

## History of Ownership and Control of the Facility

21.    The Dresser Facility site was built by Manning, Maxwell & Moore and began operations in or around 1961. Dresser Industries, Inc. acquired Manning, Maxwell & Moore in 1964.

22.    On September 29, 1998, Halliburton Company merged with Dresser Industries, Inc. and became known as Halliburton Company. The Dresser facility in Pineville was renamed Dresser Equipment Group (DEG) of Halliburton.

23.    On April 10, 2001, Halliburton sold five former Dresser divisions, including DEG, to a consortium of banking institutions which named the resulting privately owned company Dresser, Inc. The Dresser Facility in Pineville was renamed Dresser Flow Control (DFC) and was an unincorporated division of Dresser, Inc.

24.    On April 27, 2001, the Dresser Facility was acquired by Dresser RE, Inc.

25.    Dresser RE, Inc. changed its name to Dresser RE, LLC in 2008. Dresser RE, LLC is the current owner of the Dresser Facility property.

26.    In October 2010, General Electric Company acquired Dresser, Inc, which then became a division of GE Oil & Gas, LLC.

27.    In December 2016, operations ceased at the Dresser Facility.

28.    In 2017, Baker Hughes Company merged with GE Oil & Gas, LLC, which resulted in the formation of Baker Hughes, a GE Company, LLC. In October 2019, Baker Hughes, a GE

---

[4] *See* "Investigation and Monitoring Report," Stantec, July 30, 2019, page 3.5.

Company, changed its name to "Baker Hughes Company." In or around August 2020, GE Oil & Gas, LLC became Baker Hughes Energy Services LLC.

29.     Defendants operated, owned, and/or have had responsibility for the Dresser Facility during time periods relevant to Plaintiffs' claims. Defendants who merged with, acquired, and/or created other businesses by merger, acquisition, name change, and/or otherwise, or who otherwise assumed obligations under applicable contracts, had a duty to remedy the past wrongs of those parties for whose fault or obligations they are legally responsible. To the extent that any Defendant acquired the business or assets of a predecessor without a formal merger, said Defendant is liable under the continuation doctrine of Louisiana law.

### The 2011 Contamination Event

30.     On November 23, 2011, personnel at the Dresser Facility were replacing damaged fire-water suppression system components (fire hydrants, section valves, etc.). During the excavation, one of the fire hydrants, located approximately five (5) feet south of the chemical storage building, was fractured. As a result, residual fire-water from within the system transmission line filled the excavation, and a hydrocarbon sheen was observed on standing water that accumulated within the excavation. Soil and water samples were collected from stockpiled soils (from trenching) and from the holding tank, respectively, for laboratory analysis.

31.     LDEQ was informed of the event in early 2012.

32.     Initially, LDEQ proposed the installation of four monitoring wells (MW-1, MW-2, MW-3, and MW-4) in the shallow aquifer screened to 25-35 feet below ground surface.

33.     Analysis of the initial groundwater samples showed concentrations of total petroleum hydrocarbons at concentrations above LDEQ Risk Evaluation/Corrective Action Program (RECAP) screening standards.

33.    Additional site investigations were conducted throughout 2013 and included the installation of three additional monitoring wells (MW-5 through MW-7) for the collection and analysis of soil and groundwater samples. Samples collected in June and July 2013 revealed that the petroleum detections were related to chlorinated hydrocarbon compounds rather than petroleum-related compounds. In a November 18, 2013 letter to the Environmental Health and Safety Manager at the Dresser Facility, LDEQ acknowledged and confirmed that "[t]he TCE concentration in MW-2 (82 mg/1) indicates some DNAPL is present in the area . . . [and] MW-2 should be checked for mobile DNAPL prior to low flow purging/sampling."[5]

34.    Groundwater analysis from samples collected in February and May 2014 from various temporary screening borings and MW-1 through MW-7 detected seven chlorinated VOCs that exceeded the RECAP groundwater screening standards, including PCE; TCE; cis-1,2-DCE; trans-1 DCE; 1,1-DCE; 1,1,2-TCA; and VC.

35.    Soil analysis from fifteen (15) soil samples collected in April 2014 detected eight chlorinated VOCs that exceeded the Maximum Contaminant Limit (MCL).

36.    These compounds are not naturally occurring in the environment and appear in the environment only as a result of man-made creation and/or degradation of other man-made compounds.

---

[5] *See* Letter from Paula Sen, a geologist with LDEQ, to Derek Descant, the EHS Manager for the Dresser Facility, dated November 18, 2013.

Chlorinated solvents typically enter the subsurface as DNAPLs. "DNAPL" is an acronym for "dense non-aqueous phase liquid" which is a chlorinated solvent that is denser than and insoluble in water. Two of the most common chlorinated solvents are TCE and PCE, which were both found in the soils and groundwater associated with the Dresser facility.

37.     The chlorinated solvent plume in soil and groundwater has now spread well beyond the boundaries of the Dresser Facility and into the surrounding neighborhoods, including property owned and/or occupied by Plaintiffs.

38.     In addition, vapors from these chlorinated solvents have migrated into homes and businesses in the area, including properties owned and/or occupied by Plaintiffs.

39.     Reportedly, LDEQ first discovered the existence of an off-site Constituent of Concern (CoC) in December 2019 based on vapor monitoring-point data from the Aurora Park Subdivision.

40.     On or about January 8, 2020, LDEQ, through the Office of Environmental Assessment, began notifying residents in the Aurora Park Subdivision about the Dresser Contamination Plume, the presence of TCE and PCE, and the potential adverse health effects. Notification letters to residents included a "fact sheet" stating, in part:

**How might I be exposed to [TCE]?**

- Breathing [TCE] in contaminated air.
- Drinking contaminated water.
- Workers at facilities using this substance for metal degreasing are exposed to higher levels of [TCE].
- If you live near such a facility or near a hazardous waste site containing [TCE], you may also have higher exposure to this substance.

**How can [TCE] affect my health?**

. . . Exposure to moderate amounts of [TCE] may damage some of the nerves in the face. Exposure to high levels can also result in changes in the rhythm of the heartbeat, liver damage, and evidence of kidney damage. Skin contact with concentrated solutions of [TCE] can cause skin rashes. There is some evidence exposure to [TCE] in the work place may cause scleroderma (a systemic autoimmune disease) in some people. Some men occupationally exposed trichloroethylene and other chemicals showed decreased in sex drive, sperm quality, and reproductive hormone levels.

**How likely is [TCE] to cause cancer?**

There is strong evidence that [TCE] can cause kidney cancer in people and some evidence for [TCE]-induced liver cancer and malignant lymphoma. ...

The Department of Health and Human Services (DHHS) considers [TCE] to be a known human carcinogen. The International Agency for Research on Cancer (IARC) classified [TCE] as carcinogenic to humans. The EPA has characterized [TCE] as carcinogenic to humans by all routes of exposure.

*See* Exhibit **B.**

41.   LDEQ has since informed residents in other areas with similar notices about off-site contamination, as the groundwater plume has expanded:

| i. | March 3, 2020: | Timber Trails Subdivision, Rapides Parish |
| ii. | March 6, 2020: | East Side of Shreveport Highway between Highway 167 and Highway 71, Rapides Parish |
| iii. | March 27, 2020: | Graystone Subdivision, Rapides Parish |
| iv. | June 4, 2020: | Intersection of Kaylie Lane and Gray's Creek Road, Grant Parish |
| v. | June 16, 2020: | Kings Drive, Rapides Parish |
| vi. | June 25, 2020: | Grays Creek Road, Grant Parish |
| vii. | June 18, 2021: | Austin Drive, Ates Road, and Lynell Road, Rapides Parish |

43.   The Dresser Contamination Plume has not been fully and finally delineated.

## Defendants' Knowledge, Actions, and Inactions

44.   At all times material hereto, Defendants knew or should have known that toxic and hazardous chemical substances were being and had been emitted, released, and discharged from the Dresser Facility, resulting in contamination of the land, air, surface waters and groundwater within and outside of the Dresser Facility property boundaries.

45.   Defendants knew or should have known such contamination would inevitably migrate off-site to and beneath other properties, but failed to take reasonable and appropriate steps to prevent off-site migration.

46.   Despite actual or constructive knowledge of potential harm to persons living in and around the Dresser Facility, Defendants failed to timely warn members of the community of the danger and, thus, allowed them to unknowingly expose themselves and families to serious health risks.

47.   Plaintiffs could not have known Defendants' wrongful conduct or the harm it caused.

48.   In addition, Defendants actively misled members of the community by downplaying the threat to human health posed by the contamination, the scope of the contamination, and the significance of the contamination.

49.   Defendants exposed Plaintiffs and their property to multiple dangerous toxic substances including TCE and PCE with full knowledge of the dangers.

50.   Defendants' conduct was grossly negligent, wanton, reckless and in callous disregard for the rights and safety of others, including Plaintiffs, throughout its entire operation. Such conduct included: the decision to discharge and/or allow the discharge of hazardous chemical substances onto the ground and/or surface soils and into the groundwater and surface waters within and migrate outside of the Dresser Facility onto Plaintiffs' property and the surrounding class area, which contamination caused the emission of hazardous gases, vapor and fumes into air; to allow those discharges, releases and emissions to continue even though Defendants knew or should have known that such hazardous chemical substances were contaminating nearby property and the environment; to decide to operate the plant for years without compliance with numerous laws designed to protect the environment from pollution by toxic chemicals and their breakdown products; and to fail to take adequate remedial action to alleviate and properly address and abate this contamination. Further, Defendants' failure to warn those living near the Dresser Facility of the risk of damage to them from contamination also demonstrates a grossly negligent, wanton, reckless, and callous disregard for the safety of the members of the neighboring community and the value of their properties and health. With regard to Plaintiffs' claims for punitive damages, these are limited to acts and/or omissions of the Defendants that occurred during the applicability of former Article 2315.3.

51.    Defendants exposed Plaintiffs and their property to multiple dangerous toxic substances including TCE and PCE with full knowledge of the dangers. Defendants intentionally or otherwise failed to warn them of the presence of these toxic substances throughout its operation.

52.    Upon current information and belief, Plaintiffs' properties have been contaminated by hazardous chemicals, TCE and PCE, emanating from the Dresser Facility; Defendants' contaminants have infiltrated Plaintiffs' groundwater, soil, and air since it began its operation.

53.    TCE and PCE have been found in indoor air levels above health standards in buildings in the neighborhoods around the Dresser Facility and in the proposed Class Area. TCE and PCE form gas or vapor that travels through soil beneath the surface of the ground. Soil vapors that migrate under foundations may enter buildings and accumulate in enclosed areas.

54.    Further, throughout operation of the Dresser Facility, for approximately fifty (50) years, Defendants have released and stored toxic pollution waste in the groundwaters and soils underlying the Plaintiffs' respective properties. Defendants derived substantial economic benefits from this storage in that their use of the subsurface of Plaintiffs' respective properties has allowed Defendants to avoid the substantial costs and expenses associated with the proper disposal of toxic pollution and waste.

55.    As a direct result of the above-described acts and omissions of Defendants, Plaintiffs have suffered damages to their respective properties and their use and enjoyment of such properties occasioned by Defendants' misconduct, including economic damages occasioned by such harm. Plaintiffs have also sustained damages occasioned by the diminution in the value of their respective properties, including stigma damages.

56.      In addition, Plaintiffs have suffered personal injuries in the form of emotional distress and health risks as a result of actual and threatened exposure to the hazardous and toxic substances discharged at the Dresser Facility.

57.      Plaintiffs owning property impacted by the Dresser Contamination Plume also claim damages for the evaluation, cleanup, and remediation of any contamination or pollution that affects or threatens to affect soil and groundwater, regardless of classification or depth of such groundwater, and regardless of whether said groundwater is usable or unusable. Additionally, Plaintiffs are entitled to restoration of any aquifers damaged by the pollution alleged herein.

## COUNT I - NEGLIGENCE

58.      Plaintiffs repeat, reiterate, and reallege the allegations in paragraphs 1 to 65 inclusive, with the same force and effect as if more fully set forth herein.

59.      As owners and/or operators of the Dresser Facility, Defendants owed a duty to Plaintiffs — as well as to all persons whom Defendants' chemicals might foreseeably harm — to exercise due care in the handling, control, disposal, testing, use, warning, and instructing for use of chlorinated solvents at the Dresser Facility.

60.      Defendants breached their duties of due care to Plaintiffs by, among other things:

   a. Failing to contain leaks, spills, and releases of TCE, PCE, and other chlorinated hydrocarbons/chlorinated solvent chemicals;

   b. Failing to properly dispose of TCE, PCE, and other chlorinated solvent chemicals;

   c. Failing to properly store, use, and handle TCE, PCE, and other chlorinated hydrocarbons/chlorinated solvent chemicals;

   d. Failing to promptly notify or warn Plaintiffs and others similarly situated that their groundwater had been contaminated; and

   e. Failing to inspect, monitor, and handle waste and waste retention areas at the Dresser Facility.

61.     Plaintiffs have been damaged as a direct and proximate result of one or more of the negligent acts or omissions on the part of Defendants. Plaintiffs' groundwater, soil, and outdoor air, and/or indoor air have been adversely affected by TCE, PCE, and other chlorinated hydrocarbons/chlorinated solvent chemicals.

62.     The contamination caused by Defendants' actions and omissions has caused the devaluation of Plaintiffs' property and economic damages for non- or depreciated use and exposed Plaintiffs to personal harm and risks that require immediate and long-term evaluation and care.

63.     Defendants knew or should have known that their negligent acts and omissions would cause harm of the kind suffered by Plaintiffs.

64.     Defendants actions and omissions violated the laws of the State of Louisiana, including but not limited to La. Civ. Code art. 2315 and La. Civ. Code art. 2316.

### COUNT II – NUISSANCE DAMAGES UNDER La. C.C. Arts. 667 – 669

65.     Plaintiffs repeat, reiterate, and reallege the allegations in paragraphs 1 to 65 inclusive, with the same force and effect as if more fully set forth herein.

66.     Louisiana Civil Code articles 667-669 provide a cause of action for nuisance damages resulting from industrial activities. *See* La. C.C. art. 667 (a property owner may not do any "work" that deprives his neighbors of enjoying their properties.); La. C.C. art. 668 (prohibiting "any work" that would damage a neighbor's property); and La. C.C. art. 669 (governing inconvenience caused by "diffusing smoke or nauseous smell").

67.     Defendants used the Dresser Facility property in such a way as to deprive nearby property owners of the use and enjoyment of their own property. Additionally, Defendants used the Dresser Facility property to cause damage to nearby property owners, including Plaintiffs.

68.     Defendants knew or, in the exercise of reasonable care, should have known that their "work" at the Dresser Facility would cause the damage sustained by Plaintiffs.

69.     The damage could have been prevented by the exercise of reasonable care by Defendants, but Defendants failed to exercise such reasonable care.

70.     Accordingly, Defendants are liable to Plaintiffs for damages under La. Civ. Code arts. 667 – 669.

### COUNT III — LIABILITY PURSUANT TO La. C.C. ARTS. 2317-2317.1

71.     Plaintiffs repeat, reiterate, and reallege the allegations in paragraphs 1 to 65 inclusive, with the same force and effect as if more fully set forth herein.

72.     Commencing in 1961, Defendants have had custody, ownership and control of the Dresser Facility and all systems and equipment therein.

73.     Plaintiffs' damages were caused in whole or part by defects in the Dresser Facility relating to hazardous waste disposal and storage, including but are not limited to the storage tanks, sumps, and facilities used to hold chlorinated solvents, and into which spent chlorinated solvents were disposed.

74.     These defective conditions created an unreasonable risk of harm to nearby persons and properties.

75.     Defendants knew or should have known of these defects and/or conditions.

76.     Defendants are strictly and absolutely liable to Plaintiffs for harm caused under La. Civ. Code arts. 2317-2317.1.

### COUNT IV — LIABILTIY UNDER THE GROUNDWATER ACT

77.     Plaintiffs repeat, reiterate and reallege the allegations in paragraphs 1 to 65 inclusive, with the same force and effect as if more fully set forth herein.

78.       Plaintiffs are entitled to all damages, costs, and recoveries allowed for by the Groundwater Act (La. R.S. 30:2015, *et seq.),* including costs necessary to evaluate and remediate the contamination of usable groundwater caused by and/or contributed to by the Defendants and costs recoverable pursuant to La. R.S. 30:2015(F)(1).

## DEMAND FOR JURY TRIAL

79.       Plaintiffs, individually and on behalf of the class members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants for:

a. Compensatory and statutory damages as allowed by law to restore lands to its original unpolluted state, damages resulting from storage, other property damages, and damages for loss of use, lost profits, and lost income on the land;

b. Awarding petitioners' damages for diminution in property value before and after restoration, and stigma damages;

c. Civil penalties as allowed by law;

d. Punitive and/or exemplary damages arising from wanton and reckless conduct during the period of applicability of former Louisiana Civil Code article 2315.3;

e. Pre- and post judgment interest as allowed by law;

f. To the extent that Louisiana Revised Statute § 30:2015.1 applies, approving a feasible remediation plan that complies with all applicable state regulations requiring remediation of usable groundwater to drinking water standards;

g. To the extent that Louisiana Revised Statute § 30:2015.1 applies, approving a feasible remediation plan that protects the health, safety, and welfare of the people of Louisiana;

h. An award of attorneys' fees and expert costs under Louisiana Revised Statute § 30:2015.1, or under any applicable law that specifically provides for attorney fees, costs, and expenses;

i. An award of taxable costs;

j.   A trial by jury on all issues triable by jury; and

k.   Any and all such further relief as this Court deems just and proper.

Dated: October 16, 2023                          Respectfully submitted

                                        By:   */s/ Jimmy R. Faircloth, Jr.*
                                        Jimmy R. Faircloth, Jr. (T.A.)(La. #20645)
                                        jfaircloth@fairclothlaw.com
                                        Barbara Bell Melton (La. #27956)
                                        bmelton@fairclothlaw.com
                                        Mary Katherine Price (La. # 38576)
                                        kprice@fairclothlaw.com
                                        Richard F. Norem, III (La. # 38849)
                                        enorem@fairclothlaw.com
                                        105 Yorktown Drive
                                        Alexandria, Louisiana 71303
                                        Telephone: (318) 619-7755
                                        Facsimile: (318) 619-7744

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the above and foregoing *Fourth Amended and Restated Complaint for Damages* for filing and uploading to the CM/ECF system, which will send an electronic notification of such filing to all counsel of record.

Alexandria, Louisiana, this 16th day of October, 2023.

                              */s/ Jimmy R. Faircloth, Jr.*
                              OF COUNSEL