UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **JACOB BARNES, ET AL** | **CIVIL DOCKET NO. 1:21-cv-00024** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER, LLC, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court are two motions filed by General Electric Company ("GE"): (i) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Doc. 158]; and (ii) MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 188]. Both Motions are opposed by the Plaintiffs [Docs. 166 & 194, respectively], and GE filed Reply briefs [Docs. 167 & 197, respectively]. At the Court's direction, the parties also filed supplemental briefs on the MOTION FOR SUMMARY JUDGMENT [Docs. 210 & 218]. After careful consideration, and for the reasons set forth below, GE's Motion for Summary Judgment [Doc. 188] is DENIED, and GE's Motion to Dismiss [Doc. 158] is DENIED AS MOOT.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter – among others – arises from the operations of a now-closed pipe valve manufacturing facility located in Rapides Parish, Louisiana (the "Dresser Facility"). The *Barnes* Plaintiffs, along with the Plaintiffs in the Related Cases,[1]

---

[1] The following Related Cases have been consolidated for discovery purposes: *Barrett v. Dresser, LLC*, No. 1:20-cv-01346-DCJ-JPM; *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM; *Cook v. Dresser, LLC*, No. 1:21-cv-00696-DCJ-JPM; *Petty v. Dresser, LLC*, No. 1:21-cv-02586-DCJ-JPM; *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM; *D&J Investments of Cenla, LLC v. Dresser, LLC,* No. 1:23-cv-00508-DCJ-JPM; and *Arnold v. Dresser, LLC*, No.

claim that the Dresser Facility improperly disposed of solvents, cutting oils, acids, and caustics, thereby contaminating the groundwater and soil in the surrounding area. [*Barnes* Fourth Amended Complaint, Doc. 141]. The Plaintiffs further allege that this contamination migrated onto their nearby properties, causing both property damage and either present or potential future personal injury due to their exposure to the toxins. *Id.*

Relevant here, the *Barnes* Plaintiffs also contend, among other things, that the Defendants "fail[ed] to take adequate remedial action to alleviate and properly address and abate th[e] contamination" and "fail[ed] to warn those living near the Dresser Facility of the risk" posed by the contamination. *Id.* at p. 18. They further allege that Defendants "actively misled members of the community by downplaying the threat to human health posed by the contamination, the scope of the contamination, and the significance of the contamination." *Id.*

I.  **Motion to Dismiss [Doc. 158]**

At the time GE filed its Motion to Dismiss, the basis of Plaintiffs' claims against GE was unclear. Therefore, when filing its Rule 12 motion GE sought dismissal of all claims against it on grounds that the *Barnes* Plaintiffs' claims are too broadly pled to give GE adequate notice of the claims against it, and on grounds that Plaintiffs' only potential claim against GE is based on a theory of subsidiary liability as the former parent company of the facility's owner, Dresser, Inc. Since the filing of the Motion to Dismiss, however, the issues of subsidiary and successor liability have

---

1:23-cv-01795-DCJ-JPM. All Related Cases, except for the instant case, are currently stayed pending the Bellwether trial in this matter on October 28, 2024.

been resolved in other Related Cases and neither remain viable. *See, Epperson, et al v. Dresser, LLC, et al*, No. 1:21-cv-00155-DCJ-JPM, [Doc. 84]; *Alexander, et al v. Dresser, LLC, et al*, No. 1:21-cv-00161-DCJ-JPM [Doc. 84]; and *Barton, et al v. Dresser, LLC, et al*, No. 1:22-00263-DCJ-JPM, [Doc. 211].

References to GE in the *Barnes* Fourth Amended Complaint (the "Complaint") are scant. While Plaintiffs specifically allege that "[i]n October 2010, General Electric Company acquired Dresser, Inc., which then became a division of GE Oil & Gas, LLC," [Doc. 141, ¶ 26], the remaining allegations against GE are asserted generally, and GE is lumped in with all Defendants who are alleged to have owned, operated, and/or controlled the Dresser Facility, as follows:

> 1. From 1961 to 2016, Defendants owned, operated and/or controlled an industrial facility located at 8011 Shreveport Highway, Pineville, Louisiana, which manufactured, repaired, coated, and painted specialized valves and related products (the "Dresser Facility" or "Facility").
>
> …
>
> 14. Defendants, each at various times during ownership and control of operations, failed to properly design, construct, and operate waste processes, use systems, and storage facilities to prevent leaching of hazardous wastes into the ground and groundwater and to prevent offsite migration of contaminants to/under the Plaintiffs' properties.
>
> …
>
> 72. Commencing in 1961, Defendants have had custody, ownership and control of the Dresser Facility and all systems and equipment therein.

[*Id.*, ¶¶ 1, 14, 72].

Considering that the parties have undertaken extensive discovery, the Court need not decide the issues raised by GE on the face of the Complaint (as would normally be appropriate in adjudicating a Rule 12(b)(6) motion), but rather relies on the argument and evidence submitted in connection with a motion for summary judgment. *See, e.g., Rd. Sprinkler Fitters Loc. Union No. 669, U.A., AFL-CIO v. CCR Fire Prot., LLC*, 2018 WL 3076743, at *9 (M.D. La. June 21, 2018); *see also Texas Workforce Comm'n v. United States Dep't of Educ., Rehab. Servs. Admin.*, 354 F. Supp. 3d 722, 730 (W.D. Tex. 2018) (instead of first considering the Motion to Dismiss under the Rule 12(b)(6) standard, it is in the interest of judicial efficiency to resolve this matter by applying the summary judgment standard to the entirety of this dispute), *aff'd sub nom. Texas Workforce Comm'n v. United States Dep't of Educ.*, 973 F.3d 383 (5th Cir. 2020).  For these reasons, and because the Motion for Summary Judgment is now ripe for review, GE's Motion to Dismiss [Doc. 158] is DENIED AS MOOT.

LAW AND ANALYSIS

II. **Motion for Summary Judgment [Doc. 188]**

    A. **Summary Judgment Standard**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the

nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, the court must deny the moving party's motion for summary judgment. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

    **B.**    **Analysis**

In its supplemental briefing on the Motion for Summary Judgment, Plaintiffs clarify that their claims against GE are as follows: (i) "rooted in the Louisiana Groundwater Act, La. R.S. § 30:2015.1;" (ii) negligence under article 2315; and (iii) strict liability under article 2317.1. [Doc. 210, p. 1]. With respect to article 2315, Plaintiffs' theory of liability is that GE failed to adequately control the investigation

of the contamination; failed to timely and adequately remediate; and failed to timely warn nearby landowners of the risk of harm to persons and property. Under article 2317.1, Plaintiffs' theory is one of strict liability, based on GE's "garde" – or control – of the Dresser Facility, specifically as it relates to the contamination.

In its Motion, GE seeks to minimize its role in any of the events giving rise to this litigation, arguing it did not have any involvement with the Dresser Facility until it became involved with the investigation and remediation in its capacity as the ultimate parent company providing centralized environmental support services. GE also specifically represents that the Dresser Facility, its operations, and employees were all managed by Dresser, not GE. GE further contends that Plaintiffs' Complaint is devoid of any specific allegations that GE controlled the investigation and remediation effort. In response, Plaintiffs argue that summary judgment in GE's favor is inappropriate because "[t]here is a genuine issue of material fact regarding GE's responsibility for control of the investigation, the years-delay in notifying the public regarding off-site contamination, and the failure to remediate timely and adequately." [Doc. 194, p. 2]. Plaintiffs argue this is particularly true for those Plaintiffs who purchased their property after Defendants discovered the Dresser contamination – when GE allegedly controlled the property.

The Court finds that GE's arguments fall short of the summary judgment standard. While Plaintiffs' allegations have at times referred to GE's alleged liability in terms of its control over the Dresser Facility itself and at other times have alleged GE's control over the investigation of contamination and subsequent remediation

efforts, it is clear that the *Barnes* Plaintiffs' claims hinge on GE's alleged liability for its own negligent conduct with respect to the Dresser Facility – specifically that: (i) Dresser gave its parent company, GE, the primary responsibility to oversee the investigation and remediation of the contamination plume; and (ii) GE therefore owed a duty of reasonable care in remediating the groundwater contamination plume and warning nearby landowners of any associated health risks.

The Court will address each claim in turn.

### 1. Louisiana Groundwater Act

As an initial matter, the Court notes that Plaintiffs' claims against GE cannot be "rooted" in the Groundwater Act, which "specifically states that it does not create a separate cause of action." *Thomas v. A. Wilbert & Sons, LLC*, 217 So. 3d 368, 383–84 (La. App. 1st Cir. 2017) (*citing* La. R.S. § 30:2015.1(I)). Instead, the Groundwater Act simply "change[s] the remedy available" to Plaintiffs for their tort claims related to usable groundwater. *State v. La. Land & Expl. Co.*, 339 So. 3d 1163, 1169 (La. 2022) (interpreting the Groundwater Act's sister statute, Act 312). Under the Groundwater Act, the remediation process is overseen by the Court and the Louisiana Department of Environmental Quality ("LDEQ") with the goal of ascertaining and implementing the most feasible remediation plan and requiring that any monies necessary for implementing that plan are paid into the registry of the Court – not to Plaintiffs. The Groundwater Act does not operate to provide Plaintiffs with an independent cause of action against GE.

## 2. Article 2315 Fault

Louisiana courts employ a duty-risk analysis in determining whether to impose liability under Civil Code article 2315 for the actions or inactions of a defendant. In order for liability to attach under article 2315, a plaintiff must prove five separate elements: (i) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (ii) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (iii) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (iv) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (v) actual damages (the damage element). *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 816 So. 2d 270, 275–276 (La. 2002).

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Ponceti v. First Lake Properties, Inc.*, 93 So. 3d 1251, 1252 (La. 2012). "Whether a duty is owed is a question of law." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). The duty element in this case asks whether GE had a duty to conform its conduct to a specific standard. In deciding whether to impose a duty in a particular case, this Court must make a policy decision in light of the facts and circumstances presented. *Pamplin v. Bossier Par. Cmty. Coll.*, 878 So. 2d 889, 894 (La. App. 2d Cir. 2004), *writ denied*, 889 So. 2d 266 (La. 2005), *citing Posecai v. Wal–Mart Stores, Inc.*, 752 So. 2d 762 (La. 1999).

Although GE argues it had no responsibilities with respect to the contamination in this case, Louisiana law recognizes the assumption of duty doctrine – arising out of Section 324A of the Restatement (Second) of Torts ("§ 324A") – and has specifically applied that doctrine in the context of corporate parent liability.[2] Under Louisiana law, an assumption of duty arises when the defendant: (i) undertakes to render services, (ii) to another, (iii) which the defendant should recognize as necessary for the protection of a third person. *Bujol v. Entergy Services, Inc.*, 922 So. 2d 1113, 1129 (La. 2004), *adhered to on reh'g* (Jan. 19, 2006). *See also Pickard v. Amazon*, 387 So. 3d 515, 524-25 (La. 2024). Specifically, the Louisiana Supreme Court stated in *Bujol* that:

> This Court has decided numerous cases by applying this voluntary assumption of duty doctrine as a basis for the existence of a duty of reasonable care … [W]e do not believe it to be contrary to Louisiana law to discuss the principles established in § 324A in the parent-subsidiary context for the following reasons: (1) a parent corporation can be held liable just as any other entity or person for its own acts of negligence independent of the parent-subsidiary relationship and can voluntarily

---

[2]   § 324A provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking, if

(a)   his failure to exercise reasonable care increases the risk of harm, or

(b)   he has undertaken to perform a duty owed by the other to the third person, or

(c)   the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (Am. Law Inst. 1965).

Page **9** of **17**

assume a duty not otherwise owed; (2) this Court has previously referred to § 324A in negligence cases; and (3) courts throughout the country are applying this doctrine in the parent-subsidiary context.

922 So. 2d at 1129.[3] However, even if a plaintiff proves both: (i) the assumption of a duty and (ii) that the defendant failed to exercise reasonable care to perform this duty; he may only recover damages if he further proves that (iii) the defendant's failure to exercise reasonable care increased the risk of such harm. *Bujol*, 922 So. 2d at 1129-30, *citing Tillman v. Travelers Indemnity Co.*, 506 F.2d 917 (5th Cir. 1975).[4]

Here, there are material questions of fact regarding the scope and extent of GE's control over the investigation of contamination at the Dresser Facility and on adjacent and nearby property, as well as over the remediation process itself. In its Motion, GE downplays its role in the Dresser contamination, characterizing its

---

[3] The *Bujol* court explained:

It is clear that a parent corporation, just like any other person or entity, can be held liable for its own direct acts of negligence. Further, under Louisiana jurisprudence, parties who voluntarily assume certain duties for workplace safety must perform those duties in a reasonable and prudent manner. *See, e.g., Moore v. Safeway, Inc.*, 95–1552 (La. App. 1st Cir. 11/22/96), 700 So. 2d 831, writs denied, 97–2921, \*\*16 97–3000 (La. 2/6/98), 709 So. 2d 735, 740 (holding that Shell Chemical, a plant premises owner, assumed and violated a duty to protect an employee of one of its independent contractors); *Crane v. Exxon Corp.*, 613 So. 2d 214 (La. App. 1st Cir. 1992) (holding that Exxon, through its field contract coordinator, assumed a duty of care to an employee of one of its contractors).

[4] The assumption of duty doctrine has been applied in property damages cases. *See, e.g., Constance v. Austral Oil Expl. Co.*, 2013 WL 6578178, at \*14 (W.D. La. Dec. 13, 2013) (Minaldi, J.) (questioning whether defendants' argument that assumption of duty/Section 324A applies only in personal injury cases is correct under Louisiana law), *citing Young v. Cent. Progressive Bank*, 2011 WL 1103877 (La. App. 1st Cir. 2011) (although court found no duty was imposed upon the defendants under the facts presented, there was no discussion or indication that such a duty was precluded simply because the plaintiffs were seeking damages resulting from damage to property rather than damages resulting from physical harm to an individual).

involvement in the investigation and remediation as one of "'shared service[s]' whereby GE was [merely] providing 'support' to other businesses," akin to a service provider or consultant. [Doc. 197, p. 4]. But Plaintiffs controvert this assertion by providing summary judgment evidence that it was GE, in fact, that directed the Dresser Facility's investigation and response to the contamination from the time of its discovery until the Dresser Facility was transferred to Baker Hughes in January 2019. Specifically, Plaintiffs proffer the deposition testimony of Derek Descant, onsite Environmental Health and Safety Manager at the Dresser Facility from 2008 to 2014, who testified:

> Q: The letter comes to you, Mr. Descant, from DEQ. And it says what it says, we'll get into it in a moment. But at this point were you calling the shots in terms of Dresser's response to this incident?
>
> A: I was never calling the shots in response to this incident. It was all being – as I stated previously, groundwater and groundwater analyses was not something I was familiar with. And this was being handled by – at the initial or onset, Drew Graham with GE's remediation –
>
> Q: Is it fair to say that for purposes of Dresser's response to this incident, you were the conduit for instructions coming from GE; correct?
>
> A: Conduit, intermediary, whatever you want to call it. The reason that is, is because I had been delegated signatory authority. So the DEQ knew documents to be coming from this particular facility to come from me since I had that signatory authority.
>
> Q: You weren't exercising discretion at this point, were you?
>
> A: Rephrase the question.

> Q: You were not exercising discretion; you were on -- you were responding with instructions from higher authority at the company; correct?
>
> A: Correct. I was being told what to do and when to do it.

[Doc. 194-2, pp. 31-32].

Plaintiffs argue and provide evidence that by 2013, GE had created the GE Legacy Site Center of Expertise, dictated the remediation efforts, and streamlined communications with LDEQ. In an April 17, 2013, email from Edward Kolodziej, Remedial Project Manager for GE in the Corporate Environmental Programs division, Mr. Kolodziej explained that "GE is creating a Legacy Site Center of Expertise (LSCoE) that will centralize the management of all of GE's contaminated sites. The new LSCoE will be managed at GE Corporate Environmental Programs (CEP)," [Doc. 194-7], signaling that the remediation effort at the Dresser Facility was being managed "centrally" by Dresser's parent company, GE. Underlining this point, in a July 16, 2013, email from Mr. Kolodziej to Thomas Dunnahoe, a manager for remediation consultant MWH Americas, Inc. ("MWH") (later, Stantec), Mr. Kolodziej wrote, "[Derek Descant] agreed that I could take the lead on communications with LDEQ, as long as he is kept updated," [Doc. 194-8]. Plaintiffs allege that by at least 2014, GE, through MWH/Stantec, began doing risk assessments into the nearby neighborhoods in connection with the Dresser Pineville Remediation project. [Docs. 194-9; 194-10].

Importantly, it appears that in July 2015, Mr. Kolodziej directed MWH/Stantec to investigate whether Louisiana had a "Brownfields Program that might provide a

better alternative than current case management under the RECAP program."[5] [*see*, generally, emails between GE Corporate and MHW/Stantec remediation consultants, Doc. 194-11]. After a response from Shelia Ward with MWH/Stantec, Ed Jamison (GE Corporate) and Mr. Kolodziej decided "that we (GE) are better-off in RECAP, unless perhaps we decided that a release from liability is worth the additional requirements and constraints of the VRP." [*Id.*].[6] Emphasizing GE's custody and control of the investigation and remediation process, Plaintiffs argue that GE was directly assessed by LDEQ with the Groundwater Protection Fee related to the Dresser Pineville Remediation project, and Plaintiffs proffered a bill for this fee from LDEQ to GE, showing that GE is the "billing party."[7] [Doc. 194-13].

As a related issue, GE also seeks dismissal of Plaintiffs' claim that GE failed to contain or properly remediate the pollution site, arguing that Louisiana law does not recognize a separate claim for failure to contain and/or remediate. GE relies, in part, on this Court's ruling in *Aertker v. Dresser, LLC*, in which the Court held that defendant's failure to contain or remediate is not an act of negligence separate and apart from such defendant's failure to prevent the conduct causing the alleged contamination in the first instance. 2022 WL 1415716, at *3 (W.D. La. May 4, 2022),

---

[5]   "RECAP" stands for "Risk Evaluation/Corrective Action Program."

[6]   LDEQ's Voluntary Remediation Program ("VRP") facilitates the redevelopment of properties with environmental issues by providing applicants the ability to receive a Certificate of Completion ("COC") after the successful remediation of environmental contamination at a site.

[7]   The purpose of this fee is to establish a system for funding for LDEQ review and oversight of assessment and remediation activities. La. Admin. Code tit. 33, Pt. I, § 1403.

*citing Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 254 (La. 2010); *Hogg v. Chevron USA, Inc.*; 45 So. 3d 991, 1007 (La. 2010). In *Aertker*, this Court explained:

> …the initial leakage – not the failure to contain or remediate – is the operating cause of the plaintiff's injury. Therefore, assuming Plaintiff has stated a negligence claim regarding the alleged initial disposal of hazardous substances, he does not maintain a separate negligence claim for failure to contain or remediate. Accordingly, the Court dismisses Plaintiff's negligence claim insofar as it claims Dresser failed to contain and remediate the alleged contamination.

2022 WL 1415716, at *3 (internal citations omitted).

But *Aertker* is factually and procedurally distinguishable from the instant case. In *Aertker, supra*, the Court was ruling on a Rule 12(b)(6) Motion to Dismiss in a case in which Plaintiffs alleged a separate tort against Dresser based on failure to remediate. 2022 WL 1415716, at *2. Because Dresser was the party that was alleged to have caused the contamination, the Court found that under Louisiana law any alleged failure to remediate is simply part of the damages stemming from Dresser's actions in causing the contamination. *Id.* at *3, *citing Marin*, 48 So. 3d at 254 (in context of a continuing tort, court held that "[w]hen a defendant's damage-causing act is completed, the existence of continuing damages to the plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort. Any continued dissolution into the groundwater is the continuation of the harm caused by the previous, but terminated conduct, and falls under the category of "progressively worsening damages," not damage-causing conduct."). Here, however, GE is not alleged to have caused the contamination, but rather, to have exacerbated the damages sustained by the

Plaintiffs by taking control of the remediation effort from Dresser and then failing to warn and appropriately remediate. Considering the foregoing, the Court finds that Plaintiffs have raised plausible claims against GE under article 2315.

Plaintiffs' summary judgment evidence creates a genuine dispute of fact with respect to GE's control over the investigation and remediation of the Dresser Facility contamination. Accordingly, Plaintiffs' claims pursuant to article 2315 raise issues that must be determined by the trier of fact and may not be decided on summary judgment.

### 3. Article 2317.1 Fault

Finally, Plaintiffs allege a claim against GE under Civil Code article 2317.1 of the Louisiana Civil Code, which provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case.

La. Civ. Code art. 2317.1.

The first requirement for custodial liability under article 2317.1 is that "[t]he thing which caused injury must be in the care, custody and control of the defendant." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 441–42 (5th Cir. 2021), *citing Palermo v. Port of New Orleans*, 951 So. 2d 425, 438 (La. App. 4th Cir. 2007) (emphasis added); *accord Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 565 (5th Cir. 2003). "Louisiana courts have generally held that: (1) ownership of a thing

establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." *Butler*, 16 F.4th at 441, *citing Coulter v. Texaco, Inc.*, 117 F.3d 909, 913 (5th Cir. 1997); *accord Davis v. Riverside Court Condo. Ass'n Phase II, Inc.*, 154 So. 3d 643, 648 (La. App. 4th Cir. 2014) ("[I]n determining whether a thing is in one's custody or garde, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing.").

Although the *Barnes* Plaintiffs allege that all Defendants in these Related Cases are "strictly liable" under articles 2317 and 2317.1 [Doc. 141, ¶ 76], Louisiana courts have recognized that, with its 1996 adoption of article 2317.1 to require knowledge or constructive knowledge, "the Legislature effectively eliminated strict liability under article 2317, turning it into a negligence claim." *See, e.g., Burmaster v. Plaquemines Par. Gov't*, 982 So. 2d 795, 799 (La. 2008), *overruled on other grounds by Bienvenu v. Defendant 1*, 386 So. 3d 280 (La. 2024). Therefore, Plaintiffs' claim under article 2317.1 is not technically a strict liability claim, and it requires that a duty of care was breached, just as a negligence claim does. *Butler*, 16 F.4th at 443, *citing Bd. of Comm'rs v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 729 n.52 (5th Cir. 2017).

Here, as a non-owner of the contamination site, GE may be found to have custody over the contamination site if it exercised direction and control of that site

and derived a benefit from it. In its Motion for Summary Judgment, GE argues that Plaintiffs offer no evidence of GE's control of the site, or evidence that GE benefited from its control of the site under article 2317.1. But Plaintiffs' summary judgment evidence in connection with their article 2315 claim creates genuine disputes of fact as to whether GE had control or garde of the contamination site during the alleged timeframe, and whether GE – as a parent company of Dresser – benefited from that control. Therefore, Plaintiffs' article 2317.1 claim may not be decided on summary judgment.

## CONCLUSION

Considering the foregoing,

IT IS HEREBY ORDERED that GE's MOTION FOR SUMMARY JUDGMENT [Doc. 188] is DENIED.

IT IS FURTHER ORDERED that GE's MOTION TO DISMISS [Doc.158] is DENIED AS MOOT.

THUS, DONE AND SIGNED in Chambers on this 14th day of August 2024.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE