UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **JACOB BARNES** | **CASE NO. 1:21-CV-00024** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER, LLC, ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| | |
| **D&J INVESTMENTS OF CENLA LLC** | **CASE NO. 1:23-CV-00508** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER, LLC, ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| | |
| **RAY ARNOLD** | **CASE NO. 1:23-CV-01795** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER, LLC, ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## ORDER

Pending before the Court is the DRESSER DEFENDANTS' EXPEDITED MOTION TO STRIKE PLAINTIFFS' AMENDED AND SUPPLEMENTAL SUBMISSION TO PROPOSED MOST FEASIBLE PLAN (hereinafter, the "Motion"). [Doc. 338].[1] Plaintiffs in the above-captioned matters oppose the Motion. [Doc. 340]. For the following reasons, the Defendants' Motion is GRANTED.

The facts of this case are well known to the parties and, for the sake of brevity, will not be repeated herein. What is important for the purposes of the instant Motion is the procedural posture of the case in which the instant Motion was filed. As accurately set forth in the Defendants' Motion, in August 2024, the Court issued a

---

[1] The "Dresser Defendants" are Dresser, LLC; Dresser RE, LLC; Baker Hughes Company; and Baker Hughes Energy Services LLC.

For the sake of clarity, all record document citations throughout this Ruling refer to the docket entries in the *Barnes* matter except as otherwise indicated.

Scheduling Order setting dates for the submission of all most feasible plans ("MFP") and responses by the parties and the LDEQ. [Doc. 230, *Barnes v. Dresser, LLC,* No. 1:21-cv-00024-DCJ-JPM]. Under this Scheduling Order, which tracks the procedure prescribed by the Louisiana Groundwater Act, La. R.S. § 30:2015.1(C), both Plaintiffs and Dresser were required to submit their MFPs on or before October 16, 2024, and an evidentiary hearing to adopt and/or structure an MFP was set on February 25, 2025. *Id.* Although the Dresser entities timely filed their MFP on October 16, 2024,[2] Plaintiffs did not, and instead moved for an extension of the deadline. At that time, Plaintiffs relied on the opinion of their remediation expert, ICON Environmental Services, Inc. ("ICON"), which opined that "it is premature to try and develop a comprehensive remediation plan when the TCE plume has not been delineated horizontally or vertically in Water Bearing Zone 2." [Doc. 139-1, *D&J Investments of Cenla, LLC, v. Dresser LLC,* No. 1:23-cv-00508- DCJ-JPM).

Thereafter, from October 28, 2025, through November 6, 2025, the Court conducted a jury trial on the property damages claims of two Plaintiffs in the *Barnes* matter, with the jury rendering a defense verdict on all claims (the "Bellwether Trial"). Immediately following trial, the Court reinforced that "[a]ll deadlines

---

[2] In their MFP, Dresser indicates that it has spent approximately $24 million in remediation thus far, and that the preliminary cost estimate to complete the scope of work set forth in its Plan ranges from $3 million to $4 million. Dresser's MFP shows that from approximately May 2020 through July 2022, Dresser requested and LDEQ authorized the conversion of the soil excavations into ISCO infiltration basins and approximately 4,600 gallons of 10% sodium permanganate oxidant was added to treat remaining COCs in soil at depth. From May 2018 through December 2023, ISCO remediation was applied to shallow groundwater, consisting of five ISCO injection applications, consisting of approximately 265,000 gallons of 10% sodium permanganate conducted through vertical and horizontal injection wells [Doc. 272-1, p. 34].

associated with the Louisiana Groundwater Act Remediation Orders entered in the Related Cases remain in place, including the evidentiary hearing set on February 25, 2025, at 10:00 a.m. [*See Barnes*, Docs. 230, 271]."

On December 11, 2024, after the Bellwether Trial, Plaintiffs submitted their MFP, which was authored by ICON and Richard Schuhmann, Plaintiffs' expert geologist. [Doc. 319]. Plaintiffs' original MFP indicates that ICON requested a bid from Innovative Environmental Technologies, Inc. ("IET") to perform the in-situ chemical oxidation ("ISCO") treatment at the subject property to remediate TCE concentrations above the applicable standards. Plaintiffs' original MFP discusses ICON's strategy of utilizing an injection of sodium *persulfate* (not sodium permanganate, as used by Dresser and sanctioned by LDEQ) through 48,995 injection points at an estimated cost of $165,604,026. [Doc. 319-1, pp. 29-30].

On February 3, 2025, LDEQ filed comments to both parties' proposed MFPs, making several recommendations, including the installation of additional monitoring wells, the requirement that Dresser provide a work plan for investigation of the Aetker property, and the proper handling of byproducts from all ISCO remedial actions taken. [Doc. 326]. With respect to Plaintiffs' proposed strategy to use sodium persulfate, LDEQ stated:

> The LDEQ-RD is in agreement that sodium permanganate (oxidant) ISCO injections have been a successful remedial technology to address; however, the volume of oxidant injected should be in general accordance with industry standard and as described in the ARP, the oxidant should be able to fill 0.1 to 0.15 pore volumes of contaminated media (soil and aquifer material), unless lower oxidant volumes can be substantiated and justified as effective in achieving the remedial goals in a reasonable timeframe. Additionally, an evaluation of other potential application

>strategies should be conducted to determine the method that is most efficient at dispersing the oxidant such as push and pull strategy, re-circulating wells, and/or greater density of injection points.

*Id.* at p. 5.

On January 24, 2025, the Court conducted a status conference with counsel, during which Dresser moved to continue the remediation hearing over the objection of the Plaintiffs. After discussion regarding the availability of expert witnesses, the Court reset the remediation hearing for April 15, 2025. [Doc. 325]. On February 5, 2025, Dresser filed a comprehensive Response to the Plaintiffs' MFP and the LDEQ's comments. [Doc. 328]. On March 19, 2025, Plaintiffs moved to continue the remediation hearing again due to the unavailability of an expert witness. [Doc. 333]. The Court granted the motion, and the remediation hearing was reset for May 19 through 21, 2025. [Doc. 334]. Just six days later, at the request of counsel, the remediation hearing was again rescheduled and set for June 30, 2025, through July 2, 2025 [Doc. 335]. Five days after this resetting, on March 31, 2025, Plaintiffs filed a Notice of Amended and Supplemental Submission to Proposed Most Feasible Plan ("Plaintiffs' Supplemental MFP") [Doc. 336], stating the Supplemental MFP merely supplements Plaintiffs' previous MFP by: (1) correcting an acreage calculation error in Plaintiffs' original submission, and (2) providing a cost estimate and remediation timeline. [Doc. 336]. In Plaintiffs' Supplemental MFP, the amended cost estimate for ISCO injection and monitoring totals $32,916,813. [Doc. 336-1].

In the instant Motion, Dresser argues Plaintiffs' Supplemental MFP is not a supplement at all, but an entirely new MFP submitted under the guise of correcting

a miscalculation. Dresser avers the Supplemental MFP contains material changes to key assumptions regarding aquifer thickness; radii of influence; concentrations of chlorinated solvents that will encounter the sodium persulfate; and unit prices, as well as new discussion on the use of sodium permanganate versus sodium persulfate. Dresser contends that the Supplemental MFP includes a comparison of estimated costs and remediation durations; the creation of four different treatment zones across the plume; and changes in the number of injection wells, injection intervals within each well, injection events, and duration of groundwater monitoring, all issues that Dresser would be required to substantively address in a response. Dresser also argues the IET appendix contained therein introduces an entirely new expert witness. For all these reasons, Dresser seeks an order striking Plaintiffs' Supplemental MFP [Doc. 336] as untimely and excluding any related testimony or documentary evidence from the remediation hearing as inadmissible.

## APPLICABLE LAW

Under FRCP 16(b)(4), "[a] [scheduling order] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To show good cause, the party seeking to modify the scheduling order has the burden of showing "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015), *citing Filgueira v. U.S. Bank Nat'l Ass'n,* 734 F.3d 420, 422 (5th Cir.2013) (per curiam) (internal quotation marks and citation omitted). In the context of allowing an untimely submission of expert reports, there are four factors to consider when

determining whether there is good cause under Rule 16(b)(4): "(i) the explanation for the failure to timely [comply with the scheduling order]; (ii) the importance of the [modification]; (iii) potential prejudice in allowing the [modification]; and (iv) the availability of a continuance to cure such prejudice." *Meaux Surface Protection, Inc. v. Fogleman,* 607 F.3d 161, 167 (5th Cir.2010) (internal quotation marks and citation omitted). *Accord S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).

Here, three of the four factors weigh against Plaintiffs. With respect to the first factor, the Court notes that Plaintiffs offer effectively no explanation for their failure to timely file the Amended and Supplemental MFP, save for an argument that the supplement was merely occasioned by the correction of an acreage calculation. The third factor also weighs against Plaintiffs. Dresser has incurred costs and time to evaluate and respond to Plaintiffs' original proposed MFP, and if not struck, Dresser will be prejudiced in having to now evaluate and respond to the Supplemental MFP; prepare for the cross-examination of a potentially new expert witness from IET; and incur additional time and expense to prepare and defend against the Supplemental MFP. Finally, the fourth factor weighs against Plaintiffs, because should this Court allow the Plaintiffs' Supplemental MFP to stand, the Court must permit not only Dresser to respond to the late-filed Supplemental Plan, but the LDEQ as well. This would force a *fourth* continuance of the groundwater remediation hearing. Given that several of the Related Cases are more than four years old, the Court finds that the interests of judicial economy and fairness militate against a

fourth continuance of the remediation hearing to accommodate the Plaintiffs' out-of-time filing of a Supplemental MFP.

Considering the foregoing, the Court finds no good cause for allowing the Plaintiffs to file a new version of their MFP at this late date. Accordingly,

IT IS HEREBY ORDERED that the DRESSER DEFENDANTS' EXPEDITED MOTION TO STRIKE PLAINTIFFS' AMENDED AND SUPPLEMENTAL SUBMISSION TO PROPOSED MOST FEASIBLE PLAN [Doc. 338] is GRANTED, and the Plaintiffs' Notice of Amended and Supplemental Submission to Proposed Most Feasible Plan [Doc. 336] is STRICKEN from the record. Plaintiffs will not be permitted to reference the Supplemental MFP at the remediation hearing scheduled for June 30, 2025, through July 2, 2025.

THUS, DONE AND SIGNED in Chambers on this 29th day of April 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE