UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **JACOB BARNES** | **CASE NO.  1:21-CV-00024** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| | |
| **ROBERT COOK** | **CASE NO.  1:21-CV-00696** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| | |
| **MICHELLE BARTON** | **CASE NO.  1:22-CV-00263** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| | |
| **D&J INVESTMENTS OF CENLA LLC** | **CASE NO.  1:23-CV-00508** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| | |
| **RAY ARNOLD** | **CASE NO.  1:23-CV-01795** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## MEMORANDUM ORDER

Pursuant to the Court's Memorandum Ruling and Groundwater Remediation Order, [Doc. 230],[1] these matters came before the Court for a three-day evidentiary hearing beginning June 30, 2025, in Lafayette, Louisiana.  [Doc. 335].  The purpose of the hearing was to take evidence and hear testimony regarding development of the "most feasible plan ["MFP"] to evaluate and remediate the contamination and protect the usable groundwater" at issue in the above-captioned matters "consistent with the

---

[1]  For the sake of clarity, all record document citations throughout this Order refer to the docket entries in the *Barnes* matter except as otherwise indicated.

health, safety, and welfare of the people" of Louisiana.  La. R.S. § 30:2015.1(C)(3).[2] Prior to the hearing, the Court ordered Dresser to "develop and file with the Court a plan for evaluation and remediation of the groundwater contamination located at the Dresser Facility and the surrounding areas."  [Doc. 230]; *see* La. R.S. § 30:2015.1(C)(1).  Thereafter, and in response to the Court's Order, Plaintiffs, the Louisiana Department of Environmental Quality ("LDEQ"), as well as other consulting companies provided alternate plans and comments to the proposed MFPs filed by the parties.[3]

At the hearing, the Court heard testimony from several experts, including:

1) David Angle, a geologist and hydrogeologist and expert in the areas of remediation, environmental site investigations, and the application of regulatory standards.  Mr. Angle was the primary author of Dresser's proposed MFP and testified about his preparation of that plan.

2) Robert Ettinger, an expert in vapor intrusion evaluations, who co-authored Dresser's response to the Plaintiffs' and LDEQ's plans and/or comments and testified about vapor intrusion pathways and indoor air sampling at the Dresser site.

3) Angela Levert, an environmental chemist and expert in Louisiana's Risk Evaluation/Corrective Action Program ("RECAP"), who also co-authored Dresser's MFP and testified about her preparation of the RECAP evaluation of the Dresser site.

4) Shannon Soileau, a Program Manager and Section Chief for the Environmental, Epidemiology, and Toxicology divisions of the

---

[2]   As a prerequisite to the application of the Groundwater Act, in its Memorandum Ruling and Groundwater Remediation Order, the Court entered a judicial finding that: "(i) [Dresser, LLC] has admitted responsibility for contaminating usable groundwater with TCE in and around the Dresser Facility; and (ii) that this groundwater contamination poses a threat to the public health." [Doc. 230; Doc. 271].

[3]   *See* [Docs. 272 & 319]; [Docs. 245 & 246, 23-00263].

    Louisiana Department of Health ("LDH"), who testified about the public health assessments conducted by the LDH and LDH's involvement in the remediation of the Dresser site.

5) Richard Schuhmann, an expert in the field of environmental engineering and vapor intrusion, who testified, among other things, about vapor intrusion pathways for TCE in the soil, air, and groundwater.

6) R. Brent Bray, a geologist, hydrogeologist, and environmental consultant, and principal of RBB Consultants, who authored comments in response to Dresser's proposed MFP. Mr. Bray testified about the ongoing investigation and remediation efforts, and ways to expedite the remediation of the Dresser property.

7) Gregory Miller, a geologist, hydrogeologist, and environmental consultant at Icon Environmental, who prepared the Plaintiffs' MFP and testified about the various remediation plans submitted to the Court, as well as the extent of the groundwater contamination, and the investigation and remediation activities undertaken to date.

8) Fernando A. Iturralde, an LDEQ Geology Supervisor/Hydrogeologist in the Remediation Division who is currently responsible for LDEQ's supervision of the Dresser property.

Importantly, Mr. Iturralde testified about LDEQ's review of Dresser's MFP, which he had previously addressed in a December 11, 2024, letter to the Court, as well as LDEQ's review of the Plaintiffs' proposed MFP and the alternate plans and comments received by other parties, which he had previously addressed in a February 3, 2025, letter to the Court. [Hearing Exh. D-3, D-7]. In those letters, LDEQ outlined several critical investigatory steps that must be taken before a holistic plan to remediate the groundwater plume emanating from the Dresser Facility can be

developed. Mr. Iturralde's comments in the two letters included substantive feedback and addressed significant deficiencies in the Dresser MFP. *Id.*[4]

Despite the considerable work done by Dresser to investigate and partially remediate the Dresser Facility site, it is very clear that based upon LDEQ's written comments and the testimony and evidence adduced at the hearing that the record currently contains <u>no plan</u> developed by Dresser, the Plaintiffs, or any other entity that outlines a feasible path to fully remediate the groundwater plume at issue in the Related Cases. Dresser's proposed MFP is not only deficient for the reasons outlined by the LDEQ, but it also only contemplates additional remediation steps through 2026, not through completion of the project. And Plaintiffs' proposed MFP lacks sufficient specificity to constitute a workable plan to remediate the subject groundwater plume. Nor is it clear that Plaintiffs' plan is feasible. Among other things, the Court finds it unlikely that it is feasible for Dresser to install thousands of new injection wells across the 220-acre site.[5] Furthermore, as testified to by Dr. Schuhmann, with respect to the concentration of TCE in the groundwater, the Plaintiffs' plan is based on an MCL of 2.44 parts per billion, while the LDEQ and the

---

[4] As relevant to the LDEQ letters to the Court, Mr. Iturralde's testimony at the hearing clarified that although the LDH has not developed indoor air standards, LDH consulted with ATSDR, which provided a comparison value number for LDH to recommend to the LDEQ. Mr. Iturralde testified that LDEQ is continuing its consultation with LDH and ATSDR to ensure Dresser is provided with the appropriate comparison value (CV) to be used in Dresser's calculation of the correct TCE remedial standard for the groundwater plume.

[5] As testified to by Mr. Angle, Plaintiffs' plan calls for 48,995 new injection wells based on an erroneous site/plume size of 2,200 acres, rather than the actual 220-acre size of the plume. Mr. Angle further testified that, even if corrected to the actual size of the plume, Plaintiffs' plan still calls for 4,900 injection wells.

EPA have thus far only set forth a target MCL of 5 parts per billion. Therefore, the target remediation levels in Plaintiffs' plan are lower than the current remediation standards as directed by the LDEQ.

Despite these deficiencies, the Court will consider the information and analysis provided by the Plaintiffs' plan, the "Alternate Remedial Plan" authored by John Pardue, and, especially, the thoughtful testimony of R. Brent Bray of RBB Consulting, LLC, when evaluating any future MFP that may be approved.[6] But ultimately, the Court intends to move forward with a revised and expanded MFP developed by the responsible party, Dresser. This is in accord with the comments of the supervising regulatory agency, the LDEQ. In its December 11, 2024, letter to the Court, LDEQ states that "the current ongoing remedial technologies being implemented … as outlined on pages 33-35 of [Dresser's] MFP are currently the most feasible and reasonable …" [Hearing Exh. D-3, p. 1]. And LDEQ reconfirmed the fundamental soundness of the Dresser MFP in its February 3, 2025, letter when it stated that "[t]he existing permanent and interim remedial approaches being applied at the site comprised of Soil Vapor Extraction (SVE), ISCO, and PRB … are appropriate for addressing the impact [with modifications]." [Hearing Exh. D-4, p. 2].

---

[6] Although an "Alternate Remedial Plan" authored by John Pardue was proffered prior to the hearing by the *Barton* Plaintiffs, Mr. Pardue was not called to testify, and, in any event, his plan provides neither a definitive timeline for the completion of remediation nor estimated costs of such remediation. [Doc. 245, 23-00263]. And although R. Brent Bray of RBB Consulting, LLC, was called to testify, his report provides only comments to Dresser's MFP. [Doc. 246, 22-00263].

At bottom, however, while having fully employed the process set forth in the Groundwater Act, La. R.S. § 30:2015.1(C), the Court is unable at this time to approve Dresser's MFP without significant additional work and analysis. Primarily, the Dresser MFP fails because it does not actually provide a plan to fully remediate the groundwater plume, but rather only provides the next steps Dresser intends to take in the remediation process. This does not comport with the purpose of the Groundwater Act, the purpose of which is "to evaluate <u>and remediate</u> the contamination and protect the usable groundwater consistent with the health, safety, and welfare of the people." La. R.S. § 30:2015.1(C)(3) (emphasis added). Further, the Groundwater Act requires an MFP based on standards determined by the LDEQ, LDH, and any other governmental agencies with expertise in the remediation of indoor air and groundwater. The testimony at the hearing evidenced ongoing deficiencies in the assessment of critical metrics, including the determination of the site-specific MO-3 standards for the vapor intrusion pathway to assess concentrations in indoor air that meet health-based comparison values. These deficiencies must also be addressed before an MFP can be approved. Therefore, Dresser's plan must be substantially revised and expanded before this Court will consider approval.

Further, given the effort and expense provided by the Plaintiffs in critiquing the Dresser plan and providing beneficial input for consideration by the Court and the LDEQ, the Court will also allow an opportunity for the Plaintiffs and any other party to provide comments and propose revisions to Dresser's revised MFP.

As clearly stated at the conclusion of the evidentiary hearing, the Court's goals moving forward are two-fold:

1) Dresser must continue with all deliberate speed to remediate the groundwater plume in as expeditious a manner as possible in accordance with the best scientific and environmental practices. Among other things, Dresser must continue and accelerate In-situ Chemical Oxidation ("ISCO"), including drilling such new additional horizontal and vertical injection wells as are necessary; and

2) Dresser must, in consultation with the LDEQ: (i) obtain the additional data and take the additional steps identified by the LDEQ in its December 11, 2024, and February 3, 2025, letters to the Court, as well as any subsequent testing and analysis necessarily resulting from the collection of that data; and (ii) conduct any and all state-of-the-art groundwater remediation modeling as is necessary to provide the Court with the information and data-supported cost estimates necessary for the Court to review and consider approval of an amended MFP designed to <u>fully remediate the groundwater plume to applicable regulatory standards</u>.

In light of the foregoing, and based on the testimony and evidence establishing that this task can feasibly be completed by Dresser within the next 12 months, the Court enters the following ORDERS:

1) On or before **August 3, 2026**, Dresser shall develop and file with the Court, a plan for the full evaluation and remediation to applicable regulatory standards of the groundwater contamination located at the Dresser Facility and the surrounding areas.

2) On or before **October 5, 2026**, the Plaintiffs and any other party may file written objections to, or request modifications of, the plan submitted by Dresser.

3) On or before **December 7, 2026**, LDEQ shall respond to and provide feedback to the Court with respect to the plan submitted by Dresser, as well as objections and/or requested modifications to the Dresser plan.

Thereafter, the Court will determine whether it is necessary to hold an additional evidentiary hearing to adopt or structure the most feasible plan to evaluate

and remediate the contamination and protect the usable groundwater consistent with the health, safety, and welfare of the people.

IT IS FURTHER ORDERED that the Court requests the LDEQ to copy the Court on all correspondence with Dresser to ensure that the remediation efforts are ongoing at an expeditious pace.

THUS, DONE AND SIGNED in Chambers on this 3rd day of July 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE